UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| MANJINDER S.,<br><br>    Petitioner,<br><br>    v.<br><br>CHRISTOPHER CHESTNUT et al.,<br><br>    Respondents.[1] | No. 1:26-cv-01892-TLN-SCR<br><br>A # 068-100-038<br><br>**ORDER** |

///

---

[1]    Respondents argue that only Petitioner's immediate custodian is a proper respondent and request that the Court dismiss all other Respondents from this case.  (ECF No. 13 at 1 n.1.)  In "core" habeas challenges to present physical confinement "the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). However, habeas review is also available for "non-core" challenges to future custody determinations, and in such cases the officials who would make these determinations are proper respondents. *Mejia v. Warden, California City Corr. Ctr.*, No. 2:26-CV-00965-KES-EPG (HC), 2026 WL 805684, at *1 (E.D. Cal. Mar. 23, 2026).  To give Petitioner complete relief, the Court is ordering that, in the event of his release, Respondents are to refrain from re-detaining him absent compliance with constitutional protections.  The "non-core" Respondents are necessary parties for awarding this relief.  Therefore, the Court denies Respondents' request.  However, some of the officials named by Petitioner have since left office and been replaced.  Thus, the Court directs the Clerk of the Court to substitute Todd Blanche for Pamela Bondi, Markwayne Mullin for Kristi Noem, and David Venturella for Todd Lyons and update the docket as necessary.  *See* Fed. R. Civ. P. 25(d).

1

This matter is before the Court on Petitioner Manjinder S.'s[2] ("Petitioner") Petition for Writ of Habeas Corpus (ECF No. 1) and Motion to Enforce Temporary Restraining Order ("TRO") (ECF No. 17).  For the reasons set forth below, the Court GRANTS both Petitioner's habeas petition and motion.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[3]

The instant action arises from Petitioner's allegedly unlawful detention.  (*See* ECF No. 1.) Petitioner is an immigration detainee held at the California City Detention Facility.  (*Id.*)  He is a lawful permanent resident of the United States who entered the country on October 4, 2022, at the San Francisco port of entry.  (ECF No. 13 at 2.)

On December 6, 2023, he was convicted of misdemeanor battery.  (*Id.* at 2.)  On January 22, 2025, he was convicted of two counts of assault with a deadly weapon in violation of California Penal Code § 245(a)(1) and was sentenced to one year in prison.  (*Id.* at 2, 30.)  U.S. Customs and Immigration Enforcement ("ICE") detained him on September 5, 2025.  (ECF No. 1 at 5.)  The government charged him with violating 8 U.S.C. § 1227(a)(2)(A)(i), conviction of a crime involving moral turpitude for which a sentence of one year or longer may be imposed, committed within five years of admission to the United States.  (ECF No. 13 at 2.)

Petitioner filed the instant Petition for Writ of Habeas Corpus on March 9, 2026, asserting his detention is unlawful and requesting the Court hold a hearing to determine whether his continued detention is constitutional or, in the alternative, order his release.  (ECF No. 1 at 17.) The Court appointed counsel for Petitioner on March 12, 2026, and ordered Respondents to reply to the habeas petition within three court days.[4]  (ECF No. 7.)   Respondents filed this response on

---

[2]     The Court omits Petitioner's full name to protect sensitive personal information.  *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[3]     These facts are either set forth in Respondents' briefing or not disputed by them.

[4]     This Order caused the assigned magistrate judge to vacate a scheduling order issued the previous day.  (ECF Nos. 6, 8.)

March 17, 2026.[5]  (ECF No. 13.)

On March 18, 2026, the Court, construing the habeas petition as a Motion for Temporary Restraining Order, ordered Respondents to:

> [P]rovide a bond hearing within three (3) days of this Order where Respondents bear the burden of demonstrating by clear and convincing evidence before a neutral decisionmaker that Petitioner poses a danger to the community or a flight risk. The decisionmaker must consider Petitioner's financial circumstances for bond and alternative conditions of release . . . . At the hearing, Petitioner shall be allowed to have counsel present.  If Petitioner is not found to be a danger to society or flight risk, Respondents must immediately release Petitioner.  Respondents may impose any restrictions or conditions determined to be necessary by the neutral decisionmaker at the hearing.

(ECF No. 15.)

This hearing took place in immigration court on March 20, 2026, and the immigration judge ("IJ") denied bond.  (ECF No. 16.)  Petitioner filed the instant Motion to Enforce the TRO on April 9, 2026, arguing the bond hearing was constitutionally inadequate and thus did not comply with the Court's Order.  (ECF No. 17.)  Respondents filed an opposition and Petitioner filed a reply.  (ECF Nos. 20, 21.)

## II.    MOTION TO ENFORCE TRO

### A.    Standard of Law

Federal courts have inherent authority to enforce their own orders, including those granting injunctive relief in habeas actions.  *See Leonardo v. Crawford*, 646 F.3d 1157, 1161 (9th Cir. 2011) ("[T]he district court ha[s] authority to review compliance with its earlier order conditionally granting habeas relief.").  A motion to enforce judgment is the "usual method" for requesting a court interpret its own judgment and compel compliance.  *California by & through*

---

[5]    Petitioner requests the Court strike this response as untimely.  (ECF No. 14.)  Given the fact that Respondents' counsel filed a notice of appearance the same day that the response was submitted, and shortly after the Court changed the briefing schedule, the Court exercises its discretion pursuant to the permissive language in Local Rule 230 to accept the late filing.  *See* E.D. Cal. L.R. 230 ("A failure to file a timely opposition *may* also be construed by the Court as a non-opposition to the motion.") (emphasis added)).  Nevertheless, the Court acknowledges the serious concerns raised by Petitioner relating to timeliness in habeas cases given the significant liberty interest at stake.  (ECF No. 14 at 3 n.2 ("A day in immigration detention has proven potentially fatal.").)

3

*Becerra v. Dep't of the Interior*, No. C 17-5948 SBA, 2020 WL 13093994, at *3 (N.D. Cal. July 30, 2020) (citing *Heartland Hosp. v. Thompson*, 328 F. Supp. 2d 8, 11 (D.D.C. 2004)).  If petitioner has received all relief required by the court's prior judgment, the motion to enforce should be denied.  *Heartland Hosp.*, 328 F. Supp. 2d at 11.  But if petitioner demonstrates that respondent "has not complied with a judgment entered against it, even if the noncompliance was due to misinterpretation of the judgment," the motion shall be granted.  *Id.*  To prevail on a motion to enforce an injunction, "[t]he moving party has the burden of showing by clear and convincing evidence that the enjoined party violated a 'specific and definite order of the court.'" *Kia Am., Inc. v. Rally Auto Grp., Inc.*, No. 8:22-CV-00109-JVS-JDE, 2022 WL 17185011, at *2 (C.D. Cal. Oct. 20, 2022) (quoting *FTC v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999)).

As constitutional challenges to IJ detention determinations present mixed questions of fact and law, the appropriate standard of review is "abuse of discretion."  *Martinez v. Clark*, 124 F.4th 775, 783–84 (9th Cir. 2024).  However, "due process claims and questions of law raised in immigration proceedings" are reviewed de novo.  *See Singh v. Holder*, 638 F.3d 1196, 1202–03 (9th Cir. 2011).  Under an abuse of discretion standard, the court does not reweigh evidence but instead considers whether the IJ "applied the correct legal standard."  *Id.* (quoting *Konou v. Holder*, 750 F.3d 1120, 1127 (9th Cir. 2014)).  In other words, "[i]n reviewing the IJ's determination, a district court may not second guess the IJ's weighing of the evidence.  Instead, its review is limited to whether the IJ's decision 'reflects clear legal error or is unsupported by sufficient evidence.'"  *Quan v. Barr*, No. 20-CV-08118-LB, 2021 WL 308610, at *4 (N.D. Cal. Jan. 29, 2021) (quoting *Hilario Pankim v. Barr*, No. 20-CV-02941-JSC, 2020 WL 2542022, at *8 (N.D. Cal. May 19, 2020)).

        B.       <u>Analysis</u>

Petitioner alleges the bond hearing was constitutionally inadequate for four reasons: (1) the IJ failed to consider evidence that Petitioner's detention has become unconstitutionally prolonged; (2) Petitioner was unable to secure necessary evidence because his counsel did not have adequate notice of the hearing and the IJ denied a continuance; (3) the immigration court

4

provided a constitutionally infirm summary translation of the proceedings; and (4) the immigration court did not properly assess whether Petitioner was competent to engage in the proceedings.  (ECF No. 17 at 3–4.)

In reply, Respondents argue they complied with the TRO by providing a bond hearing and the proper forum to challenge the result of that hearing would be an appeal to the Board of Immigration Appeals.  (ECF No. 20 at 2.)  Respondents contend the evidence they introduced into the record regarding Petitioner's felony convictions justified the IJ's determination that Petitioner was subject to mandatory detention.  (*Id.* at 3.)  They argue there is not sufficient evidence that Petitioner's counsel was provided inadequate notice of the hearing, and the IJ was correct in denying a continuance based on this Court's Order directing that a bond hearing take place within three days.  (*Id.* at 4.)  Finally, Respondents aver that summary translation is routine in immigration court, that Petitioner's counsel requested a summary translation, and that any claims regarding competency were not properly raised at the hearing.  (*Id.*)

The Court has reviewed an audio recording of the bond hearing provided by Petitioner's counsel.[6]  (ECF No. 18.)  It is evident from the recording that the IJ failed to meaningfully evaluate whether the government had proven Petitioner's dangerousness or risk of flight by clear and convincing evidence.  The IJ's ruling was:

> I find that [based] on these [criminal] sentences [Petitioner] is a danger to the community.  The Court finds that these convictions [Petitioner] has been sentenced to . . . are aggravated felonies.  The Court also finds that based on these convictions statutorily [Petitioner] is not eligible for the relief that [Petitioner] alleges to be applying for: 42(a) cancellation [of removal].  Further, the Court finds that both in addition to [Petitioner] being a flight risk and a danger to the community based on this evidence, the Court also finds that pursuant to INA 236(c)(1)(B) that the Court does not have jurisdiction in this case to set bond even if it wanted to; and also citing 8 CFR 1003.19(h)(2)(i)(D) that this is the specific type of crimes whereby the Court [finds] that [Petitioner] is a mandatory detainee based on INA section [*sic*].  This is no longer an issue [as to

---

[6]    Respondents state they "cannot confirm if the flash drive provided by Petitioner's counsel contains the same [digital audio recording] that was provided to Respondent [*sic*] counsel from EOIR since Petitioner's counsel did not provide Respondent's counsel a copy of what was provided to the Court."  (ECF No. 20 at 3.)  Based on the fact that the recording provided to the Court covers the entire hearing, and the fact that the timestamps cited by Respondents align with the recording, the Court is satisfied that the parties are citing to copies of the same recording.

whether Petitioner] is admitted or not. That is not the issue in this case. [Statutorily, Petitioner] would not be eligible for a custody redetermination. Therefore, based on these convictions the Court finds that [Petitioner] is both a flight risk and [Petitioner] is a danger to the community and that pursuant to the sections cited that [Petitioner] is not eligible for bond.

While the Court is not permitted to re-weigh the evidence or reverse the IJ's factual findings that Petitioner is a danger to the community or flight risk, it is permitted to review the IJ's compliance with its TRO and with the law. *Singh*, 638 F.3d at 1202–03. It is clear the IJ believed the immigration court could not grant Petitioner bond regardless of any showing on the merits, despite the Court's TRO mandating release if Respondents failed to satisfy their burden at the hearing. (ECF No. 15.) It would obviously be impossible for the immigration court to provide Petitioner a meaningful bond hearing if that were the case.

In any event, the hearing fell far short of constitutional adequacy under any standard of due process. While the IJ heard argument at some length from Respondents' counsel, Petitioner's counsel was not given any opportunity to present arguments or testimony before the IJ ruled, with the exception of a request for a continuance. "A fundamental requirement of due process is 'the opportunity to be heard.'" *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965) (citing *Grannis v. Ordean*, 234 U.S. 385, 394 (1914)).

The IJ's decision therefore "reflects clear legal error [and] is unsupported by sufficient evidence."[7] *Quan*, 2021 WL 308610, at *4. Because this abuse of discretion amounts to a deprivation of Petitioner's right to due process at the bond hearing, the Court GRANTS Petitioner's motion to enforce the TRO. Having found that the hearing was constitutionally

---

[7]     While Petitioner's counsel reserved appeal at the end of the hearing, it is not clear if any appeal has been perfected. The Court nevertheless finds after consideration of the factors articulated in *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007), that prudential exhaustion is not required. First, an administrative appellate record is not necessary to reach a proper decision on Petitioner's due process claim. Second, any risk of deliberate bypass of administrative procedures is reduced by the fact that district courts will only have jurisdiction in the "rare case[s]" where future petitioners allege a "colorable" constitutional or legal challenge to the government's procedures. *Hernandez v. Sessions*, 872 F.3d 976, 989 (9th Cir. 2017) (citing *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1271 (9th Cir. 1991)). Finally, it is unlikely the agency will correct its own mistake upon further review, particularly since the immigration court determined it lacked jurisdiction to hear a request for bond.

6

deficient and applied an incorrect standard, the Court need not address the parties' additional arguments.

### III.    HABEAS PETITION

#### A.    Standard of Law

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

#### B.    Analysis

Petitioner challenges his detention[8] without notice or a hearing as violating the Fifth

---

[8]    Respondents argue that because Petitioner has been given a bond hearing the Court should dismiss the habeas petition as moot. (ECF No. 16 at 2.) "Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies." *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). "The burden of demonstrating mootness is a heavy one." *Cantrell v. City of Long Beach*, 241 F.3d 674, 678 (9th Cir. 2001). And a case "becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *United States v. Yepez*, 108 F.4th 1093, 1099 (9th Cir. 2024) (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)). Respondents' assertion of mootness misunderstands the nature of preliminary relief. *See Lackey v. Stinnie*, 604 U.S. 192, 200 (2025) ("Preliminary injunctions [] do not conclusively resolve legal disputes."). This Court granted Petitioner temporary relief pending final resolution on the merits of the Petition. As the Court found above, Respondents failed to provide a constitutionally compliant bond hearing, thus he continues to seek appropriate relief. Additionally, a live controversy still exists over the procedural due process rights owed to Petitioner. Unless Respondents mean to concede they violated Petitioner's due process rights, the Petition remains ripe for resolution.

Amendment's Due Process Clause. (*See* ECF No. 1 at 16.) In opposition, Respondents contend Petitioner is an "applicant for admission" who is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) ("§ 1225(b)(2)"), and that his detention is constitutional. (*See* ECF No. 13 at 3–7.)

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas*, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."). These due process rights extend to immigration proceedings, including deportation proceedings. *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. S*ee Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

i.    *Liberty Interest*

"Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71 (1992)). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).

The Court finds Petitioner has a clear interest in his continued freedom protected by the Due Process Clause based on his time living in the United States and his status as a legal permanent resident. Even if he is subject to removal or his freedom could be revoked by statute, Petitioner's liberty is still protected by the Due Process Clause. *See Hernandez*, 872 F.3d at 993,

*Zadvydas*, 533 U.S. at 693.

The Court is not persuaded by Respondents' assertion that Petitioner is an "applicant for admission" subject to mandatory detention under § 1225(b)(2).  Courts throughout the Ninth Circuit, including this one, have repeatedly rejected Respondent's argument on the applicability of § 1225(b)(2).  *See e.g.*, *Hortua v. Chestnut*, No. 1:25-cv-01670-TLN-JDP, 2025 WL 3525916 at *3 (E.D. Cal. Dec. 9, 2025); *Estrada-Samayoa v. Cruz*, No. 1:25-CV-01565-EFB, 2025 WL 3268280, at *4 (E.D. Cal. Nov. 24, 2025) (collecting cases).  "These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [Petitioner], living in the interior of the country."  *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases).  In comparison, "[t]he government's proposed reading of the statute (1) disregards the plain meaning of [§] 1225(b)(2)(A); (2) disregards the relationship between [§§] 1225 and 1226; (3) would render a recent amendment to [§] 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice."  *Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (collecting cases).

Respondents put forth no new arguments or facts justifying reconsideration in this case.  Thus, for the aforementioned reasons and consistent with this Court's numerous prior rulings, the Court finds Petitioner is not an applicant for admission subject to mandatory detention under § 1225(b)(2).  Petitioner's detention is instead governed by § 1226(a) and due process requires, at a minimum, a bond hearing.

ii.      Process Required

To determine what process is necessary to ensure any deprivation of Petitioner's protected liberty interest accords with the Constitution, the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural

9

requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  As set forth below, these factors support Petitioner's constitutional right to notice and a pre-deprivation hearing.

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by the government's actions detaining him. *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025).  Accordingly, this factor weighs in favor of finding Petitioner has a significant private interest that has been affected by his detention.

Second, the risk of erroneous deprivation of Petitioner's liberty interest is lowered in light of his criminal history.  (ECF No. 13 at 2.)  "Civil immigration detention, which is 'nonpunitive in purpose and effect,' is justified when a noncitizen presents a risk of flight or danger to the community." *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO, 2025 WL 2686866, at *6 (E.D. Cal. Sept. 18, 2025).  As Petitioner received virtually no procedural safeguards such as a meaningful bond or custody redetermination hearing, there is a risk that he is being detained without justification. *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).

Third, the government's interest in detaining Petitioner without notice and a pre-deprivation hearing is low.  The effort and cost required to provide Petitioner procedural safeguards are minimal. *See Doe*, 787 F. Supp. 3d at 1094.  Notice and custody determination hearings are routine processes for Respondents.  Any burden associated with their provision does not outweigh Petitioner's substantial liberty interest and the risk of erroneous deprivation. Respondents articulate no legitimate interest in detaining Petitioner absent these processes.

Upon consideration of the *Mathews* factors, the Court finds Petitioner was entitled to notice and a hearing before a neutral decisionmaker prior to his detention and received neither. Petitioner's detention thus violates the Fifth Amendment Due Process Clause.

**IV.    CONCLUSION**

For the foregoing reasons, the Court GRANTS the Petition for Writ of Habeas Corpus[9]

---

[9]    Petitioner also seeks an award of attorney's fees and costs under the Equal Access to Justice Act.  (ECF No. 1 at 17.)  The Court will consider any timely filed request for fees and costs on a properly noticed and supported motion.

(ECF No. 1) and the Motion to Enforce Temporary Restraining Order (ECF No. 17).  The Court further ORDERS as follows:

1.      The Clerk of the Court is directed to substitute Todd Blanche for Pamela Bondi, Markwayne Mullin for Kristi Noem, and David Venturella for Todd Lyons.  Fed. R. Civ. P. 25(d);

2.      Respondents must provide a constitutionally compliant bond hearing within seven (7) days of this Order where Respondents bear the burden of demonstrating by clear and convincing evidence before a neutral decisionmaker that Petitioner poses a danger to the community or a flight risk.  The decisionmaker must consider Petitioner's financial circumstances for bond and alternative conditions of release.  *Hernandez*, 872 F.3d at 991.  At the hearing, Petitioner shall be allowed to have counsel present, and counsel shall be allowed to present evidence, testimony, and argument in accordance with due process.  If Petitioner is not found to be a danger to society or flight risk, Respondents must immediately release Petitioner.  Respondents may impose any restrictions or conditions determined to be necessary by the neutral decisionmaker at the hearing.

3.      **Respondents must file a notice certifying compliance with this provision of the Court's Order within eight (8) court days from the date of this Order.**

4.      If Petitioner is released pursuant to this Order, Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that the Government's interest in protecting the public and/or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention.  *See Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990.  At any such hearing, Petitioner shall be allowed to have counsel present.

5.      **The Clerk of the Court is directed to serve California City Detention Facility**

11

**with a copy of this Order**; and

6.    The Clerk of the Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: July 9, 2026

_____

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

12